IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY FRANKLIN, individually, and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA N.A.,<br><br>Defendant._____/ | No. C 05-00519 CRB<br><br>**MEMORANDUM AND ORDER RE: AWARD OF ATTORNEYS' FEES AND COSTS** |

Plaintiff Timothy Franklin filed this overtime and meal and rest period class action in state court. Defendant Bank of America removed the action to federal court on the ground that plaintiff's claims were premised on a violation of the Fair Labor Standards Act ("FLSA"). The Court approved a settlement on June 16, 2006 and entered judgment. Now pending for the Court's decision is class counsel's application for an award of attorneys' fees and costs.

### BACKGROUND

In December 2004, plaintiff Timothy Franklin filed this overtime and rest and meal period class action in state court. Plaintiff brought the lawsuit on behalf of employees who worked for defendant Bank of America in California as an account executive, account executive trainee, and/or any similar position that is responsible for soliciting home mortgage loans from consumers. He sought back pay for non-payment of overtime under the FLSA,

California Labor Code and the California Business and Professions Code. He also sought penalties for violations of California's meal and rest period laws. On February 3, 2005, defendant removed the action to this Court on the basis of federal question jurisdiction.

Two months later plaintiff filed a motion for class certification. The Court held an initial case management conference on May 6, 2005 and set the hearing on plaintiff's motion for class certification for September 2, 2005. The parties engaged in a full day of mediation on July 25, 2005 and reached a settlement before defendant even filed an opposition to the certification motion. On August 16, 2005, they advised the Court of the settlement and stipulated to vacating the hearing on the motion for class certification.

The settlement requires defendant to pay up to a maximum of $9 million. In particular, defendant agrees to pay class counsel $2.25 million in attorneys' fees, $50,000 in costs, $20,000 to the named plaintiff, with the remainder, $6.68 million, to be distributed to the class. Joint Stipulation of Settlement ¶¶ 26-29. The settlement does not, however, "establish a fund for the payment of claims." Id. ¶ 25(b). Instead, the parties will determine the number of weeks the class has worked during the relevant period and divide that number into the approximately $6.68 million available to pay the class to derive a "Dollars per Compensable Work Week" amount. Id. ¶¶ 25(c), 29(b). As of June 16, 2006, class counsel estimated the Dollar per Compensable Work Week as $66.79. Each class member who timely submits a proper claim will be paid a set amount based on the number of weeks the claimant worked during the relevant period multiplied by the Dollars per Compensable Work Week amount. Id. ¶ 29. The monies set aside for class members who do not make timely claims remains "the exclusive property of the Bank." Id. ¶ 25(b).

The Court rejected the parties' initial motion for preliminary approval of the settlement because the proposed Notice to the Class provided that defendant *would pay* class counsel $2.25 million in attorneys' fees, instead of that it would pay up to that amount. The Notice also did not clarify that the number of timely claims would not affect the amount of money each claimant received; instead, unclaimed funds would remain with defendant.

2

The parties revised the proposed Notice in response to the Court's concerns and the Court preliminarily approved the settlement.

Class members were required to submit their claims by April 22, 2006. As of that date, approximately 42 percent of the class had submitted claim forms, claiming approximately $3.6 million, that is, 54 percent of the funds available for distribution to the class. Declaration of Donald C. Holland in Support of Joint Motion for Final Approval of Class Action Settlement ¶ 14. That amount may increase or decrease as outstanding issues are resolved, although there is no evidence that the amount defendant will ultimately pay to the class will differ dramatically from that figure.

The settlement assumed that the Court would award class counsel $2.25 million in fees and did not provide for what would happen if the Court approved a lesser amount. Joint Stipulation ¶ 26, ¶ 29(b) (stating that the Class Distribution Amount shall be $6,680,000). The Court therefore assumed that if the Court awarded less than $2.25 million defendant would keep the difference. The parties' revised Notice to the Class, however, advised that the remaining money will be distributed to the class. At the hearing on the final approval of the settlement, the Court again raised concerns about what would happen to the difference, if any, between the $2.25 million in fees defendant agreed to pay and what the Court actually awards. In a written submission in response to those concerns, defendant again asserted that the difference will be distributed to the class.

At the Court's request, class counsel submitted declarations setting forth the attorneys' fees incurred to date, that is, the lodestar. The fees total $727,240: $193,160 for Mark R. Thierman of the Thierman Law Firm, $113,410 for H. Tim Hoffman and Arthur W. Lazear of Hoffman & Lazear, and $420,670 for attorneys at Dostart Clapp Gordon & Coveney, LLP.

The Court must now decide how much to award to class counsel in attorneys' fees and costs, as well as whether, and in what amount, to award an enhancement fee to the named plaintiff.

//

//

**DISCUSSION**

**I.    Costs**

Class counsel's request for reimbursement of $50,000 in costs is GRANTED as reasonable.

**II.   Lead Plaintiff**

The settlement requires defendant to pay lead plaintiff a fee of $20,000. Joint Stipulation of Settlement and Release ¶ 28. It is not subject to Court approval. As the Court approved the settlement, defendant must pay lead plaintiff this amount.

**III.  Attorneys' Fees**

In most monetary class actions, class counsel ask the district court to award them as attorneys' fees a percentage of the settlement amount. Unlike most issues before the district court, an application for attorneys' fees from a settlement fund is rarely contested. See In Re Quantum Health Resources, Inc., 962 F. Supp. 1254, 1256 (C.D. Cal. 1997). Here, defendant has contractually agreed not to challenge an award of up to $2.25 million (indeed, it expressly agreed to pay $2.25 million in fees), thus it cannot object to class counsel's fee request. Absent class members also infrequently oppose class counsel's fee application as they often do not have the resources to retain counsel to mount a credible objection. As there is no guarantee the court will award a class member attorneys' fees incurred in opposing a fee application, the absent class member's potential gain from a reduced fee award must exceed the fees incurred in opposing the application to make the objection economically sensible. See In re Unisys Corp. Retiree Medical Benefits ERISA Litig., 886 F.Supp. 445, 457 n.17 (E.D. Pa. 1995) (fee applications in common fund cases are generally unopposed "because those parties with a stake in the matter, the plaintiffs, are usually unorganized or lack the incentive to make challenges").

Accordingly, the Court should not blindly approve a fee application simply because there is no objection. Since defendant has agreed that any amount awarded to class counsel reduces each claimant's recovery (or, to put it another way, any amount less than the requested $2.25 million increases each claimant's recovery), the Court must closely

4

scrutinize the fee application and determine an appropriate fee award based on the circumstances of this case. See Vizcaino v. Microsoft, 290 F.3d 1043, 1052 (9th Cir. 2002) ("Rubber-stamp approval, even in the absence of objections, is improper"); see also Zucker Occidental Petroleum Corp., 192 F.3d 1323, 1328 (9th Cir. 2000) ("In a class action, whether the attorneys' fees come from a common fund or are other paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper"); Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994) ("WPPSS") ("Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs").

Class counsel ask the Court to utilize the percentage-of-the-fund method and award counsel 25 percent of $8.95 million, the maximum amount defendant agreed to pay less $50,000 in costs for a total fee award of $2,237,500.00.

### A. Methods for determining the fee

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." Vizcaino, 290 F.3d at 1047. The only requirement is that the fee be reasonable under the circumstances. See Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000); WPPSS, 19 F.3d at 1295.

### B. The lodestar provides a reasonable fee

The Court, in its discretion, concludes that class counsel's lodestar, with a 1.2 multiplier, provides a reasonable fee of $872,688. This method and amount are appropriate for several reasons.

First, the parties' settlement agreement acknowledges that this is not a common fund case. The settlement provides:

> The Parties represent that the Maximum Payment is a settlement amount that takes into account the probability that many Class Members for various reasons will not file claims. The Parties recognize that the settlement would have been substantially less if all of it had to be paid. No fund has been created.

5

Joint Stipulation of Settlement and Release ¶ 67; see also id. at ¶ 25(b) ("This Settlement does not establish a fund for the payment of claims"); see also In re Vitamins Antitrust Litig., 2001 WL 34312839 at * 3 (noting that the lodestar may be appropriate when the settlement does not fall within the common fund paradigm).

Moreover, class counsel filed this lawsuit in California state court; defendant removed it to federal court. It appears that in California the state courts do not have discretion to apply a percentage-of-the-fund method to determine fees in cases, such as this, where "no fund has been created." See Lelalao v. Beneficial California, Inc., 82 Cal.App.4th 19, 37 (2000). Thus, when class counsel filed this lawsuit they should have anticipated a lodestar award.

Second, this case settled so early in the litigation that counsel did not engage in any law and motion before this Court. They filed a motion for class certification, but the case settled before defendant even filed an opposition. They also took only limited written discovery and no depositions. This case settled substantially earlier than most cases in which a percentage-of-the fund approach is applied.

Third, applying a percentage-of-fund method is more appropriate when the defendant actually pays the full amount of the fund. When the parties settled this lawsuit for the $9 million maximum amount they did not expect that defendant would actually pay $9 million. See Joint Stipulation of Settlement at Release at ¶ 67 ("the Maximum Payment is a settlement amount that takes into account the probability that many Class Members for various reasons will not file claims. The Parties recognize that the settlement would have been *substantially* less if all of it had to be paid") (emphasis added). Indeed, in this Court's experience the claim rate is generally what it is in this case, 40 to 50 percent. Thus, the $9 million figure is a fiction. A settlement, such as this, in which the defendant pays only $5.3 million,[1] is worth

---

[1] Defendant will pay approximately $3.6 in claims, $50,000 in costs, $20,000 to the lead plaintiff and $872,688 in attorneys' fees for a total of $4,542,688.00. Defendant has represented that the difference between the $2,250,000.00 in fees they agreed to pay and what the Court actually awards in fees will be distributed to the class, that is, $1,377,312.00. Defendant will not pay all of this money to the class, however, as it is only distributed to those class members who make claims. Approximately 54 percent of the funds available have been claimed; applying

6

less than a settlement in which the defendant actually pays $9 million, even if the defendant in the first settlement agreed to pay up to $9 million. Absent other factors which are not present here, class counsel in the $5.3 million settlement should be compensated less than class counsel in the second.

Class counsel nonetheless insists that if the Court utilizes the percentage-of-the-fund method it must apply the percentage to the fictional $9 million figure. See Motion for Final Approval of Request for Attorneys Fees at 5 (citing Williams v. MGM-Pathe Comm. Co., 129 F.3d 1026 (9th Cir. 1997)). Assuming class counsel is correct, this is an additional reason the lodestar is an appropriate method here; the Court declines to award fees based on a percentage of an amount of money which the parties knew the settlement was not worth. See Joint Stipulation of Settlement and Release at ¶ 67 ("The Parties recognize that the settlement would have been substantially less if all of it had to be paid").

Four, the Court has accepted class counsel's lodestar at face value without any deductions for duplicative or unnecessary work. By doing so, the Court has avoided some of the problems that have led federal courts to utilize the percentage-of-the fund method rather than the lodestar. See In re Oracle Sec. Litig., 131 F.R.D. 688, 689 (N.D. Cal. 1980). The Court has accepted counsel's lodestar even though counsel have requested fees for three separate law firms, and have not explained why three law firms with experienced counsel were required.

Five, a multiplier of 1.2 is appropriate in light of the specific circumstances of this case. The Court takes class counsel's word that the recovery is "very favorable" to the class; thus, some multiplier is appropriate. But while there was no controlling Ninth Circuit opinion on some of the important legal issues, prior to the filing of this action this very Court ruled in a previous case involving similar bank employees on the very issues cited by class counsel; namely, that their California Unfair Business Practices claim was not preempted by the FLSA and that the employees were not covered by FLSA exception 7(i) for employees of

---

this percentage to the $1,377,312.00 figure means defendant will pay an additional $743,748.00 to the claimants. The actual monetary value of the settlement, then, is approximately $5,286,436.00, or approximately $5.3 million.

a retail or service establishment. See Barnett v. Washington Mutual, 2004 WL 2011462 (N.D. Cal. Sep. 9, 2004) (no preemption); id. August 5, 2004 Memorandum and Order (no 7(i) exception).

Moreover, this case is related to another action, filed before this lawsuit, in the District of Minnesota, Abduallah v. Bank of America, CA No. 04-2951, and counsel had the benefit of the pleadings and documents filed in that action. Second Supplemental Declaration of James F. Clapp at ¶ 3(A),(B).

Further, the Court did not issue any decisions in this case and thus it does not have any precedential value or "broad public impact." Counsel did not obtain any injunctive relief. There was very little work performed before the Court. And the contingencies involved in undertaking the litigation do not warrant a large enhancement. The case settled before substantial discovery commenced; thus counsel incurred little in costs, at least little relative to the fees counsel seek.

Finally, the 1.2 multiplier is reasonable as a percentage of the benefit actually obtained for the class. The fees awarded amount to 16.5 percent of the amount defendant will actually pay. This percentage is appropriate in light of the circumstances discussed above. It bears repeating that the parties, including class counsel, understood that the settlement is actually worth "substantially" less than $ 9 million. Joint Stipulation of Settlement and Release ¶ 67.

Class counsel rely primarily on Vizcaino in support of their request for a fee amounting to their lodestar with a 3.26 multiplier. In Vizcaino, plaintiffs filed a class action challenging Microsoft's refusal to provide employee benefits to its "freelance" workers. The freelance workers, as a condition of work, had agreed in writing that they would not receive benefits. The district court certified the class and dismissed the action. On appeal, a panel of the Ninth Circuit reversed with respect to certain claims. An en banc panel then reversed on an additional claim, but held that plaintiffs had not exhausted their administrative remedies with respect to one of the other claims revived by the panel. On remand the district court narrowed the class. The Ninth Circuit granted mandamus and remanded to the district court.

8

Following remand, the parties engaged in settlement negotiations and two years later settled the case. Under the terms of the settlement Microsoft paid $96,885,000.00 into a settlement fund and changed its employment practices, "resulting in the hiring of over 3000 class members as W-2 employees entitled to participate in employee benefit plans and programs." 290 F.3d at 1046.

The district court awarded class counsel 28 percent of the cash settlement fund ($27,127,800) as attorneys' fees and objectors appealed. The Ninth Circuit held that the district court did not abuse its discretion based on several circumstances. First, class counsel had "'achieved exceptional results for the class'" given that "counsel pursued this case in the absence of supporting precedents, in the face of agreements signed by the class members forsaking benefits . . . and against Microsoft's vigorous opposition throughout the litigation." 290 F.3d at 1048.

Second, the above circumstances made the case "extremely risky" for class counsel. The court noted that "[t]wice plaintiffs lost in the district court--once on the merits, once on the class definition--and twice counsel succeeded in reviving their case on appeal." Id.

Third, the settlement "generated benefits beyond the cash settlement fund." Id. at 1049. As a result of the settlement, Microsoft "changed its personnel classification practices, a benefit counsel valued at $101.48 million during the 1999-2001 period alone." Id. The court noted that the litigation clarified the law of temporary worker classification and as result "many workers who would have been classified as contingent workers received the benefits associated with full time employment." Id.

Finally, counsel's representation of the class extended over an eleven-year period and thus "required counsel to forgo significant other work, resulting in a decline in the firm's annual income." Id. at 1050.

None of the circumstances the district court and the Ninth Circuit found persuasive in Vizcaino are present here. While counsel achieved a benefit for the class, there is nothing in the record that would permit the Court to characterize it as an "exceptional" result within the meaning of Vizcaino. There was not an absence of supporting precedents as this Court had

9

previously ruled in favor of plaintiff's position. Moreover, the Court never issued any rulings in this action, let alone significant rulings against the class and, of course, no order of the Court was appealed.

Nor would the Court characterize this case as "extremely risky." While all complex civil litigation involves some risk, there is nothing in the record that would permit the Court to conclude that this case was any more risky than the ordinary wage and hour class action. The case was never realistically at risk of being dismissed as defendant never filed a motion to dismiss; it did not even file an opposition to the motion for class certification.

Further, unlike the settlement in Vizcaino, the settlement in this case is solely monetary--plaintiff did not obtain any injunctive relief. Moreover, the litigation did not clarify the law in such a way as to benefit the public, as in Vizcaino. There were no legal rulings in this case.

Finally, this litigation lasted seven months--not eleven years as in Vizcaino–and class counsel do not argue that their pursuit of this litigation caused counsel to "forgo significant other work, resulting in a decline in the firm's annual income." Indeed, while this litigation has been pending class counsel have appeared before the Court in other significant class action wage and hour litigation.

## CONCLUSION

For the reasons stated, the Court awards class counsel $50,000 in costs and $872,688.00 in attorneys' fees.

**IT IS SO ORDERED.**

Dated: July 18, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE